IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

TIMOTHY S. WISE,

        Petitioner,

v.                                         Case No. 1:20-cv-00059

WARDEN,
FCI McDowell,

        Respondent.


**PROPOSED FINDINGS AND RECOMMENDATIONS**

On January 24, 2020, Petitioner, Timothy S. Wise ("Wise"), proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of a prison disciplinary hearing. (ECF No. 1). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Given that the disciplinary proceeding conducted by the prison complied with the constitutionally mandated due process requirements, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Wise's pending motion requesting leniency, (ECF No. 11), **GRANT** Respondent's requests for dismissal, (ECF Nos. 6, 22); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1), and **REMOVE** this matter from the docket of the Court.

I.    **Relevant History**

On July 23, 1998, following a jury trial, Wise was convicted of three counts of aiding and abetting armed bank robbery, in violation of 18 U.S.C. § 2213(a)(c), and three counts of use of a firearm to commit a crime of violence, in violation of 18 U.S.C. § 924(c). *See Wise v. United States,* Case No. 5:02-cv-00221-KMO (N.D. Ohio Feb. 2002) at ECF No. 10 at 1-2. On October 14, 1998, Wise was sentenced to a total term of incarceration of 610 months. *Id.* at 2.

On January 7, 2019, while Wise was incarcerated in Federal Correctional Institution Talladega ("FCI Talladega"), located in Talladega, Alabama, Wise received an Incident Report prepared by members of the FCI Talladega Unit Discipline Committee ("UDC"). (ECF No. 6-1 at 37). The Incident Report included a description of the events leading to the issuance of the report prepared by Correctional Officer T. Jeter ("C.O. Jeter"). (*Id.*). C.O. Jeter explained that on January 6, 2019, at approximately 9:38 p.m., he was called to the Beta-A Unit to respond to a report that an inmate, Wise, was under the influence of alcohol. (*Id.*). As C.O. Jeter was escorting Wise to the Lieutenant's Office in order to conduct a breathalyzer test, Wise admitted that he had been drinking alcohol, but stated that it was legal for someone of his age to do so. At approximately 9:44 p.m., C.O. Jeter conducted a breathalyzer test, using a device called the Alco-Sensor III, which returned a blood alcohol content (BAC) result of .098. Shortly thereafter, at approximately 10:00 p.m., C.O. Jeter conducted a second breathalyzer test that returned a BAC result of .063. (*Id.*). Following the tests, Wise was escorted without incident to the Special Housing Unit ("SHU") and placed in a cell. (*Id.*).

The UDC informed Wise in the Incident Report that, based on the facts detailed in the report, it was referring the charge to a Disciplinary Hearing Officer ("DHO") for further proceedings. (ECF No. 6-1 at 38). Wise was informed by correctional staff of his right to make a statement or remain silent in response to the investigation. Wise declined to make a statement regarding the Incident Report, saying only "Lieutenant I have no comment." (*Id.*). On January 9, 2019, Wise received a Notice of Disciplinary Hearing before the DHO. (*Id.* at 40). Wise was informed that he was charged with violating Code No. 112—use of alcohol. (*Id.*) Wise signed a form acknowledging that he had been advised of the rights he would have at the DHO hearing, including the right to call witnesses, present evidence, and have a staff member represent him. (*Id.* at 42). Wise indicated he did not wish to have a staff representative or to call witnesses in his defense. (*Id.* at 40).

Wise's disciplinary hearing was held on January 16, 2019. (ECF No. 6-1 at 45). The DHO determined that Wise was guilty of the offense as charged. The DHO based this determination on the Incident Report, which detailed the breathalyzer results consistent with alcohol consumption, as well as Wise's admission that he had been drinking. (*Id.*). The DHO additionally relied on the fact that Wise stated at the hearing "I'm guilty." (*Id.*). The DHO noted that "[p]ossession of intoxicants inside a prison environment is prohibited and will not be tolerated." (*Id.*). The DHO determined that appropriate sanctions would be disallowance of 41 days of Good Conduct Time ("GCT"); forfeiture of 82 days of GCT; 30 days disciplinary segregation; 180 days loss of phone and visitation privileges; and a $50 monetary fine. (*Id.*).

On March 19, 2019, Wise's appeal of the adverse DHO opinion was rejected by the Bureau of Prisons' ("BOP") Regional Office. (ECF Nos. 6 at 7, 6-1 at 28). Wise provided an appeal of this determination, dated April 28, 2019, in which he argued that the

sanctions were unjust as there were extenuating circumstances. (ECF No. 20-1 at 2). On July 29, 2019, the BOP's Central Office rejected Wise's appeal of the Regional Office's denial, finding that the appeal was untimely as it was not received until July 2, 2019. (*Id.* at 1).

Wise initiated this habeas proceeding during a period of incarceration at Federal Correctional Institution McDowell ("FCI McDowell") located in Welch, WV. (ECF No. 1).[1] In his first typewritten petition, Wise detailed a number of grievances involving actions taken by BOP staff members. Wise asserted that he arrived at FCI McDowell in August 2019, following his transfer from FCI Talladega. (*Id.* at 1). After arriving at FCI McDowell, he was held in the SHU while suffering from repeated seizures, despite the fact that tests revealed he did not have drugs or alcohol in his system. (*Id.*). Wise claimed that he has not received medication prescribed to treat his seizures. Furthermore, he complained that BOP staff members were improperly handling his mail, were denying him the opportunity to make telephone calls and collect paperwork, and were inappropriately denying him access to legal resources and associated materials, preventing him from filing two § 2241 motions challenging the imposition of disciplinary sanctions which occurred at FCI Talladega. (*Id.* at 1-2). Wise requested that the Court send him copies of relevant legal forms. (*Id.*). On January 28, 2020, the undersigned entered an Order directing Respondent to answer or otherwise respond to Wise's § 2241 petition within 60 days. (ECF No. 4).

On February 18, 2020, Wise submitted a letter to the Clerk of Court in which he

---

[1] Wise additionally contemporaneously filed an identical § 2241 petition which is addressed in a separate opinion. *See Wise v. Warden,* Case No. 1:20-cv-00058 (S.D.W. Va. Jan. 24, 2020) at ECF No. 1.

attached legal mail that he contends was improperly opened by BOP staff. (ECF No. 5 at 1). Wise asserted that he had recently submitted a civil rights lawsuit related to these improper actions by BOP employees. (*Id.*).

On February 24, 2020, Respondent filed a Response to Order to Show Cause. (ECF No. 6). Respondent requests that Wise's petition be dismissed. (*Id.* at 1). Respondent argues that Wise's numerous claims of wrongful actions by BOP employees relate to the conditions of his confinement, rather than the execution of his sentence, and as such, may not be raised under § 2241, but must instead be brought in a lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 391 (1971). (*Id.* at 4-5). With respect to the remaining cognizable claims raised by Wise, his challenge to two disciplinary proceedings which resulted in the loss of GCT, Respondent asserts that the claims lack merit and should be dismissed. (*Id.* at 9).[2] According to Respondent, the record clearly shows that Wise received all the due process protections to which he was entitled, and the DHO's finding of guilt was based on constitutionally sufficient evidence. (*Id.* at 12-13). Additionally, with respect to the disciplinary proceeding Wise challenges in this petition, Respondent contends that Wise failed to properly exhaust his available administrative remedies. (*Id.* at 5). Accordingly, Respondent requests that this petition be dismissed. (*Id.* at 13).

Wise submitted a Reply to Respondent's request for dismissal on March 16, 2020. (ECF No. 8). Wise claims that he has been trying to obtain pertinent documents related to the January 16, 2019 disciplinary hearing, to show the violations of his due process rights, but has not received the documents from the BOP. (*Id.* at 1). Wise states that he

---

[2] As Wise has raised his challenge to the disciplinary hearing which occurred on May 20, 2019 in a separate contemporaneous petition, the undersigned will address arguments related to that petition in a separate opinion. *See Wise v. Warden,* Case No. 1:20-cv-00058 (S.D.W. Va. Jan. 24, 2020) at ECF No. 1.

wishes to obtain medical records and copies of "the actual appeals" he filed, which he believes will support his claims. (*Id.*).

Wise explains that after being in prison for several years, he decided to begin "truly trying to rehabilitate himself." (*Id.* at 2). From 2006 until 2018, Wise received only two disciplinary infractions. He took classes, became a GED tutor, and found employment as a data entry specialist. (*Id.*). Wise describes an incident that occurred shortly before he was transferred to FCI Talladega wherein he hurt his tooth on a rock hidden in his food. (*Id.* at 3). This incident led to dental complications, and Wise was prescribed a course of antibiotics. (*Id.*). However, due to numerous transfers between different BOP institutions, Wise's treatment regimen was frequently interrupted, and he still suffered from an infected abscess in his tooth when he arrived at FCI Talladega in approximately November 2018. (*Id.* at 3-4).

At FCI Talladega, Wise began experiencing severe pain in his tooth, but was not seen by a dentist. (ECF No. 8 at 4). Wise was eventually prescribed Amoxicillin, but he believed this to be an ineffective medicine for his ailment. He continued to experience pain as his tooth condition worsened. (*Id.*). After Wise's fiancé spoke with an endodontist who expressed concern that Wise's condition sounded life-threatening, Wise began repeatedly asking BOP employees for medical treatment, to no avail. (*Id.* at 4-5).

On the evening of January 6, 2019, Wise was still in pain from his untreated dental condition and had been unable to eat for two days.[3] An inmate entered Wise's cell and offered him wine, which Wise rejected. (*Id.* at 5). When the inmate noticed that Wise's face was "all swelled up," Wise described his injury, and the inmate offered that alcohol

---

[3] Wise indicates these events occurred on January 16, 2019, the date of his disciplinary hearing; however, he presumably intended to refer to the evening of January 6, 2019.

killed germs and bacteria and might help fight the infection in Wise's tooth. (*Id.*). Wise claims that by then he was "willing to try almost anything to lessen the pain," so he drank a bottle of the proffered homemade wine. (*Id.*). Wise states that this did not cause him to become drunk or act disruptively, but that, nevertheless, a short while later a Correctional Officer came to his cell and brought him to the SHU where two breathalyzer tests were administered and provided a positive result for alcohol consumption. (ECF No. 8 at 5-6).

Wise continued to experience intense pain in his tooth while housed in the SHU, and was later seen by a regional dentist, who confirmed that Amoxicillin was an ineffective treatment for Wise's bacterial abscess. (*Id.* at 6). Wise was prescribed a course of penicillin and later had the infected tooth removed. (*Id.*). During Wise's disciplinary hearing related to his possession of alcohol, he pled guilty, but believed there were extenuating circumstances. (*Id.*). However, the presiding DHO would not permit Wise to explicate the extenuating circumstances and instead assigned "maximum sanctions." (*Id.* at 6-7). Wise asserts that he was under "medical duress" when he consumed the alcohol and sanctioning him under those circumstances was "an insult to justice." (*Id.* at 7-8). Wise explains that if he is "allowed his records" he can easily show the factual basis for his claims. (ECF No. 8 at 7).

Wise contests Respondent's assertion that he failed to exhaust his administrative remedies, stating that based on the "prison mailbox rule," his appeal was not untimely. (*Id.* at 8). Wise believes that the failure to exhaust was not his fault, but due to "systemic failures inherent in the BOP's grievance procedures." (*Id.*). Wise asks this Court to deny Respondent's motion to dismiss and expunge the disciplinary sanction. (*Id.*).

On April 22, 2020, a Memorandum Opinion and Order was entered addressing Wise's request for an extension of the deadline and various other motions submitted in

Wise's separately filed § 2241 petition. (ECF No. 9). On April 27, 2020, Janet Fenn, Wise's fiancé, submitted an Affidavit of Observation in support of Wise's claims. (ECF No. 10). Ms. Fenn corroborates Wise's account of an untreated dental issue, describing various visits she made to see Wise during which she observed Wise in obvious pain due to the untreated infection in is tooth. (*Id.* at 1-2). Ms. Fenn explains that on January 6, 2018, she spoke with Wise, and he told her he was experiencing intense pain and illness related to the infection. (*Id.* at 2). On January 10, 2018, Ms. Fenn was informed by prison staff that Wise had "gotten into trouble" and was no longer permitted visits. (*Id.*). Ms. Fenn attaches a statement from James A. Davis, Jr., D.M.D., who explains that a severe dental abscess can, if left untreated, cause severe pain and swelling and even be life-threatening. (ECF No. 10-1 at 1). Ms. Fenn additionally attaches correspondence between her and Wise dated December 2018, in which Wise describes his attempts to obtain treatment for his tooth. (ECF No. 10-2 at 1). Wise submitted a motion contemporaneously with Ms. Fenn's affidavit, requesting that he be granted leniency and not be required to demonstrate certificate of service as he is unable to access a copier machine. (ECF No. 11).

On May 12, 2020, Wise submitted a motion to which he attached a completed form for a petition for habeas corpus under § 2241. (ECF No. 16-1). In the motion, Wise requests that the attached petition be accepted as "true and correct documents" for both of his § 2241 petitions pending in this Court. (ECF No. 16 at 1). Wise additionally asks this Court to consider the difficulties he has faced in presenting his legal arguments due to interference by FCI McDowell employees. (*Id.* at 1-2). Wise asks this Court to consider all documents submitted in each of his separate § 2241 petitions in conjunction. (*Id.* at 2).

In the attached form, Wise further outlines his challenge to the disciplinary hearing which occurred on January 16, 2019. (ECF No. 16-1 at 6). Wise explains that he wished to

detail the extenuating circumstances at the disciplinary hearing, but was rebuffed by the DHO and not permitted to explain after admitting that he committed the act as charged. (*Id.* at 6). Wise believes that this amounts to a violation of his due process rights and requests that the sanction be expunged, his GCT restored, and his custody points readjusted. (*Id.* at 6-7).

On May 26, 2020, Wise submitted medical records in support of his claim which were sealed due to the sensitive nature of their content. (ECF Nos. 17, 18, 19). On June 5, 2020, Wise entered a Declaration in which he attaches a number of documents related to his appeal of the disciplinary sanctions imposed on January 16, 2019. (ECF No. 20). Wise argues that the documents prove he received the initial rejection of his appeal at the regional office level on April 8, 2019, and mailed his central office appeal on April 28, 2019. (*Id.* at 1). Wise asserts that employees at FCI Talladega frequently interfered with his mail and the rejection of his appeal as untimely was improper given that he placed the appeal in the mail within 30 days of his receipt of the initial rejection. (*Id.* at 1-2).

On July 8, 2020, Wise submitted a Notice of Change of Address wherein he informed the Court that on June 25, 2020, the United States District Court for the Northern District of Ohio granted Wise's motion for compassionate release, and reduced his sentence to time served. (ECF No. 21 at 1).[4] Wise states that he is now scheduled to be released on July 9, 2020, following a 14-day period of quarantine. (*Id.*). On July 9, 2020, Respondent entered a motion requesting that Wise's petition be dismissed as moot due to his release from custody. (ECF No. 22 at 1). Respondent attaches an affidavit prepared

---

[4] The docket in Wise's criminal case confirms that Wise submitted a motion for compassionate release which was granted on June 25, 2020, resentencing Wise to time served. *Wise,* Case No. 5:02-cv-00221-KMO at ECF No. 112.

by Destiny Spearen, an employee of the BOP's Consolidate Legal Center, which attests to the fact that Wise was released from BOP custody on July 8, 2020. (ECF No. 22-1 at 1).

## II.    <u>Standard of Review</u>

Respondent requests that this Court dismiss Petitioner's § 2241 petition, but does not discuss under what authority he brings the request. Because Respondent filed a Response concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from

10

prior or pending court proceedings, when resolving the motion, without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## III.    Discussion

### A. Mootness

Wise recently notified the Court that his sentence was reduced pursuant to a request for compassionate release, and he has been released from prison. (ECF No. 21). As a prerequisite to the exercise of federal jurisdiction, the complaint before the court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Action by a defendant that simply accords all the relief demanded by the plaintiff may moot an action." *W. Virginia Highlands Conservancy v. Norton*, 161 F. Supp. 2d 676, 679 (S.D.W. Va. 2001) (citing 13A Federal Practice and Procedure § 3533.2). A case becomes moot, and accordingly no longer falls within the court's subject matter

jurisdiction, when it is "impossible for a court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012)).

It is well-settled that a prisoner must be in custody at the time he brings a petition for a writ of habeas corpus. *Leonard v. Hammond,* 804 F.2d 838, 842 (4th Cir. 1986). Although his subsequent release will not deprive the court of subject matter jurisdiction, "[t]he question of mootness is separate and distinct from the jurisdictional issue." *Id.* Generally, the transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir.2007). Therefore, when a federal prisoner files a habeas corpus petition seeking injunctive relief from a sentence, his release from custody may render the petition moot.

There are two exceptions to the mootness doctrine. *Leonard,* 804 F.2d at 842. First, under the "collateral consequences" exception, a habeas petition is not rendered moot after a petitioner is released from custody where the petition challenges collateral consequences that continue after expiration of the sentence. *Id.* (citing *Carafas v. LaVallee,* 391 U.S. 234 (1968)). For example:

> [w]here the criminal conviction ... results in the continued denial of important civil rights, such as the right-to-vote or the right to be considered for jury duty, the claim for habeas relief will remain a live controversy even after the prisoner has been released from custody. Similarly, where the criminal conviction may result in an enhanced sentence should the petitioner later be convicted of another crime, h[is] stake in habeas relief permits the court to exercise its judicial freedom long after [ ] he has been freed.

*Broughton v. State of N.C.,* 717 F.2d 147, 148-49 (4th Cir. 1983) (internal citations omitted). Second, the "capable of repetition, yet evading review" exception prevents a

petition from becoming moot when two elements are present: (a) the challenged action is too short in duration to be fully litigated before it ceases or expires, and (b) there is a reasonable expectation that the same petitioner will be subjected to the same wrongful action again. *Leonard,* 804 F.2d at 842 (citing *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)).

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has recently clarified the extent to which release from custody will moot a challenge to a sentence. *See United States v. Ketter*, 908 F.3d 61, 66 (4th Cir. 2018). In that case, the defendant challenged his sentence on appeal as procedurally and substantively unreasonable. *Id.* The United States argued that, because the defendant had served his custodial term of incarceration, his claim was moot, notwithstanding that he continued to serve a term of supervised release. *Id.* at 65. The Fourth Circuit rejected this contention, finding that the custodial term and the term of supervised release presented a "unitary" sentence, and "a challenge to that sentence presents a live controversy, even though [the defendant] has served the custodial portion of that sentence." *Id.* The Fourth Circuit explained that "[a]lthough the underlying prison sentence has been served, a case is not moot when an associated term of supervised release is ongoing, because on remand a district court *could* grant relief to the prevailing party in the form of a shorter period of supervised release." *Id.* at 66.

Wise is currently serving a term of supervised release. *Wise,* Case No. 5:02-cv-00221-KMO at ECF No. 112. However, this collateral consequence is likely insufficient to sustain Wise's habeas petition given the nature of the claim raised and the relief he requests. Wise does not challenge his conviction or raise a substantive challenge to his

sentence as imposed; rather, he brings this petition to challenge the outcome of a disciplinary hearing which resulted in a loss of GCT..

"Where the petitioner elects only to challenge the execution of his sentence and not the validity of the conviction, collateral consequences are irrelevant." *Maultsby v. Rickard*, No. 1:17-CV-04612, 2018 WL 4289648, at \*2 (S.D.W. Va. June 29, 2018), *report and recommendation adopted*, No. CV 1:17-04612, 2018 WL 4291740 (S.D.W. Va. Sept. 6, 2018) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Courts in this Circuit have held that a petitioner's release from incarceration renders moot a challenge to the disallowance of GCT as a result of a disciplinary hearing. *See Adigun v. Rickard*, No. 1:18-CV-01368, 2019 WL 3995981, at \*1 (S.D.W. Va. July 30, 2019), *report and recommendation adopted*, No. CV 1:18-01368, 2019 WL 3986352 (S.D.W. Va. Aug. 21, 2019) ("According to the BOP inmate locator, the petitioner was released from BOP custody on May 3, 2019. Accordingly, his request for relief can no longer be granted and his section 2241 petition and Motion to Reinstate Good Conduct Time Credit are moot."); *see also Southard v. Williams,* No. 2:15-CV-69, 2016 WL 3349320, at \*4 (N.D.W. Va. June 15, 2016) ("Indisputably, efforts to have good conduct time restored once one is released from incarceration would be futile."); *Johnson v. Adams*, No. 2:04CV605, 2005 WL 2593525, at \*1 (E.D. Va. Oct. 12, 2005) ("[The petitioner] was released from the Federal Bureau of Prisons on July 21, 2005. Therefore, his petition requesting a different calculation of his good conduct time is moot."); *Melendez v. Masselieno*, No. CIV.A. ELH-13-1864, 2014 WL 460848, at \*4 (D. Md. Feb. 4, 2014) (inmate's release from prison rendered moot his challenge to the result of a disciplinary hearing and request that GCT be restored). Wise wishes this Court to reverse the outcome of the disciplinary hearing and reinstate his GCT, however, this would be a futile directive as he is no longer within the custody of the BOP.

As it appears from the record that Wise has been released from custody, the undersigned **FINDS** that his petition is likely moot notwithstanding his current term of supervised release. *See e.g, Kokoski v. Small*, No. CIV.A. 5:07-0145, 2008 WL 3200811, at *3 (S.D.W. Va. Aug. 5, 2008) ("Neither of these issues has any collateral consequences on [the petitioner], as the amount of GCT credited towards [the petitioner's] prior sentences has no effect on the time he will serve on supervised release, or on any term of imprisonment he could receive in the future, should his supervised release be revoked."). However, given that this development has occurred late in the proceedings, and Wise has not been given the opportunity to address the issue of mootness, the undersigned will briefly consider the merits of his petition.

### B.  Claims Related to FCI McDowell

At various points throughout his pleadings, Wise objects to interference by employees at FCI McDowell with Wise's ability to present his legal arguments. Wise indicates that he is concerned this will result in his § 2241 petition becoming time-barred. (ECF No. 15 at 4). Wise is currently pursuing his claim that BOP employees have unconstitutionally interfered with his access to the Courts in a separate lawsuit filed in this District. *See Wise v. Maruka et. al,* Case No. 1:20-cv-00056 (S.D.W. Va. Jan. 24, 2020) at ECF No. 1. As noted in a previous submission, that is the appropriate mechanism to raise these claims which may not be asserted in this § 2241 petition. *See Crooker v. Stewart*, No. CIV.A. ELH-14-1972, 2015 WL 1210209, at *3 (D. Md. Mar. 13, 2015) (acknowledging a split among circuits, but noting that "the Fourth Circuit has said that where a petitioner does not assert entitlement to release, the claim is properly treated as a suit under 42 U.S.C. § 1983, or in the case of a federal inmate, a *Bivens* claim.") (citing as an example, *Braddy v. Wilson*, 580 Fed. Appx. 172 (4th Cir. 2014)); *also Wilborn v.*

*Mansukhani*, 795 F. App'x 157, 164 (4th Cir. 2019) (citing *Rodriguez v. Ratledge*, 715 F. App'x 261, 265-66 (4th Cir. 2017)).

While Wise has indicated he believes this illegal activity has interfered with his ability to pursue this petition, he has not demonstrated this to be the case. Wise has been able to file numerous motions in this case and has cogently presented his argument that the disciplinary sanctions should be overturned. Wise has not identified any specific argument or motion that he has not been permitted to submit, other than alleging in one instance his lack of access to a copier machine prevented him from submitting a certificate of service. (ECF No. 11). The undersigned **FINDS** that Wise's motion requesting this failure be excused should be granted.

To the extent Wise is concerned that the alleged interference will result in this petition becoming untimely, this fear is unwarranted, as the timeliness of his petition is not at issue in this proceeding. Finally, to the extent that Wise argues this has impeded his attempts to obtain documents related to his utilization of his administrative remedies, he has apparently received those documents as they have been submitted in this proceeding. (ECF No. 20-1). In any event, as explained more fully below, Respondent's request that this petition be dismissed for failure to exhaust is premature at this stage of the proceedings. Accordingly, the undersigned **FINDS** that Wise's complaints of legal interference raised throughout his pleadings have not impeded his ability to sufficiently present his case so that it may be considered on the merits.

### C. Exhaustion

Generally, an inmate should exhaust adequate alternative remedies before filing a writ of habeas corpus in federal court. *Boumediene v. Bush*, 553 U.S. 723, 782 (2008); *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (an inmate must exhaust

administrative remedies before filing a § 2241 petition) (citations omitted). Habeas relief under 28 U.S.C. § 2241 is always available "to safeguard the fundamental rights of persons wrongly incarcerated," but it is an "avenue of last resort." *Timms v. Johns*, 627 F.3d 525, 531 (4th Cir. 2010) (citing *Martin-Trigona v. Shiff*, 702 F.2d 380, 388 (2d Cir. 1983)). Although § 2241 does not contain a statutory exhaustion requirement, courts have consistently required prisoners to exhaust their administrative remedies before seeking habeas review under § 2241. *See, e.g.*, *Timms*, 627 F.3d at 530-33 (requiring exhaustion in a § 2241 matter); *McClung,* 90 Fed.Appx. at 445 ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being hauled into court. *Arbaugh v. Berkebile*, No. CIVA 5:10-0528, 2010 WL 5481198, at *3 (S.D.W. Va. Nov. 8, 2010), *report and recommendation adopted*, No. 5:10-CV-00528, 2011 WL 9387 (S.D.W. Va. Jan. 3, 2011) (citing *Jones v. Bock,* 549 U.S. 199, 204, (2007); *McCarthy v. Madigan,* 503 U.S. 140, 144–45 (1992)).

Respondent contends that Wise failed to exhaust his administrative remedies as to the disciplinary hearing he seeks to challenge in this petition because he failed to file a timely appeal of the Regional Director's denial of his challenge to the disciplinary sanctions. (ECF No. 6 at 5-7). Wise, by contrast, asserts that he in fact did submit a timely appeal, but that the ineptitude or malfeasance of BOP employees caused his appeal to be rejected as untimely. (ECF No. 20 at 1-2).

This Court has previously recognized, in the analogous context of § 1983 lawsuits, that it is only when the record makes it pellucidly clear that a litigant has failed to exhaust her available administrative remedies that the issue should be resolved on a motion to dismiss. *See Assi v. W. Reg'l Jail*, No. 3:18-CV-00517, 2019 WL 6769013, at *6 (S.D.W.

Va. Nov. 21, 2019), *report and recommendation adopted*, No. CV 3:18-0517, 2019 WL 6740613 (S.D.W. Va. Dec. 11, 2019). At this early stage of litigation, neither party has had an opportunity to develop and produce evidence determinative of the exhaustion issue. Based on the limited record before the Court, and Wise's claim that his ability to exhaust his remedies properly was impeded by BOP employees, it would be premature to dismiss the complaint for failure to exhaust administrative remedies. *See Custis v. Davis*, 851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *see also Spradlin v. Rodes*, No. 3:16-CV-06986, 2017 WL 4277150, at *3 (S.D.W. Va. Aug. 31, 2017), *report and recommendation adopted,* No. CV 3:16-6986, 2017 WL 4248849 (S.D.W. Va. Sept. 25, 2017) (same); *Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 5815882, at *2 (D. Md. Oct. 5, 2016) ("The practical availability of remedies is not a pure question of law. As the Supreme Court noted … determining whether administrative remedies are truly available requires development of a record of facts and evidence relating to whether the administrative process operated as a dead end, whether it was knowable by an ordinary prisoner, and whether officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation.") (citations omitted). Therefore, the undersigned **FINDS** that Respondent's motion to dismiss on the ground of lack of exhaustion is premature and should be denied.

### D. Claim of due process violation

Even if Wise's petition was not rendered moot by his release from custody, his

claim would still be subject to dismissal, because the proceeding he challenges did not violate the minimal due process protections afforded to inmates in disciplinary proceedings. The Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment") protects inmates from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Wise has a constitutionally protected liberty interest in his good conduct time, as such time impacts the duration of his sentence. *See, e.g. Marino v. Masters*, No. 1:12-cv-00393, 2015 WL 66511, at *5 (S.D.W. Va. Jan. 5, 2015) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)). Accordingly, when a federal prisoner is subject to a disciplinary proceeding that may result in the loss of good conduct credit, the prisoner is guaranteed certain minimal requirements of procedural due process, including:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, (1985) (citing *Wolff*, 418 U.S., at 563–567). The DHO follows a procedure that incorporates these due process protections. *See* 28 C.F.R. § 541.8.

In this petition, Wise challenges the result of the disciplinary hearing which occurred on January 16, 2019. Wise does not assert that he was denied any of the required procedural due process protections, instead, he argues that, although he committed the act as charged, the conviction violated due process because there were extenuating circumstances behind Wise's consumption of alcohol. (ECF No. 16-1 at 6). Wise's pleadings largely focus on the negligence of prison staff in attending to his medical needs. (ECF No. 8, 10). To the extent that Wise believes he was denied adequate medical care,

he may raise this claim in a civil rights lawsuit. However, as this petition is brought under § 2241, and challenges the result of a disciplinary sanction, the only relevant consideration is whether the removal of Wise's GCT comported with constitutional due process requirements.

In addition to procedural requirements, the Supreme Court has held that due process requires that a sanction revoking good time credits be supported by "some evidence." *Hill*, 472 U.S. at 455. The Fourth Circuit recently considered this standard and clarified that the requirement there be "some evidence" in the record to support the DHO's findings is "an exceedingly lenient standard, requiring only 'a modicum of evidence' in order 'to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens.'" *Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (quoting *Hill,* 472 U.S. at 455). In *Tyler,* the Fourth Circuit held that in order to sustain a punishment imposed pursuant to a prison disciplinary hearing, the State "need only point to 'some evidence' in the record—even if it is merely circumstantial—that [the prisoner] was guilty of the charged disciplinary offense." *Id.* at 171. The Fourth Circuit further found that the lack of any probative evidence in the record beyond conclusory statements of guilt meant the prison failed to clear even this lenient standard, but admonished that "this is the very rare case where federal habeas relief will be available due to a total absence of evidence in the record…" *Id.* at 173.

In this case, the DHO concluded that Wise was guilty of violating Code 113—possession of intoxicants. (ECF No. 6-1 at 45). In reaching this conclusion, the DHO relied on the Incident Report prepared by a Correctional Officer, which related that Wise admitted to using alcohol on January 6, 2019, but stated that it was permissible for someone of his age to drink alcohol. The Incident Report further reflected that

breathalyzer tests conducted by the Correctional Officer returned results consistent with alcohol use. (*Id.*). The DHO also relied on Wise's admission of guilt, noting that Wise stated "I'm guilty." (*Id.*).

Wise does not dispute that he committed the act as charged, or that he admitted his guilt at the hearing, but instead objects to the DHO's refusal to consider Wise's explanation of the extenuating circumstances, namely his untreated tooth infection. (ECF No. 8 at 7). The constitution does not mandate, however, that prison officials take into account mitigating circumstances when imposing disciplinary sanctions. As long as a disciplinary sanction is obtained while following the required due process protections, and is supported by some evidence, due process rights are not implicated. While the DHO may have chosen to show mercy based on the mitigating factors presented by Wise, and his assertion that he consumed alcohol in an attempt to self-medicate, there was no constitutional requirement that DHO do so where there was evidence sufficient to support a conclusion that Wise committed the act as charged. *See e.g. Thomas v. Drew,* 365 F. App'x 485, 488 (4th Cir. 2010) (discussing necessary showing to establish that disciplinary sanctions are so excessive that they violate constitutional protections); *Foster v. Rivera*, No. 9:07-0576-HMH-GCK, 2007 WL 3002330, at *7 (D.S.C. Oct. 10, 2007) ("Judicial review of prison disciplinary actions is, therefore, limited solely to the determination of whether there is evidence in the record to support the DHO's decision."); *Stone v. Rickard*, No. 1:16-CV-10763, 2018 WL 3637360, at *2 (S.D.W. Va. July 31, 2018) (fact that DHO required to evince some evidence for decision does not "'imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review.'") (quoting *Hill,* 472 U.S. at 455–56)

As the disciplinary hearing to which Wise objects complied with the procedural

due process requirements mandated by the Constitution, and as the finding that Wise consumed alcohol in violation of prison rules was supported by constitutionally sufficient evidence, Wise is unable to successfully demonstrate a constitutional violation based on his claim that he was entitled to leniency due to extenuating circumstances surrounding the commission of the offense. Accordingly, the undersigned **FINDS** that this claim should be dismissed.

## IV.    <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the presiding District Judge **GRANT** Wise's pending motion requesting leniency, (ECF No. 11), **GRANT** Respondent's requests for dismissal, (ECF No. 6, 22); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1), and **REMOVE** this matter from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the

Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and to counsel of record.

**FILED:** July 10, 2020

Cheryl A. Eifert
United States Magistrate Judge